UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| NITZA WRIGHT <br><br> Plaintiff <br><br><br> CHARLOTTE BURROWS, CHAIR, <br> U.S. EQUAL EMPLOYMENT <br> OPPORTUNITY COMMISSION <br><br> Defendant | CASE NO.: 1:22-cv-21090-RNS <br><br> **SECOND AMENDED COMPLAINT** <br> **JURY TRIAL DEMANDED** |

I. **NATURE OF THE ACTION**

1. This action, under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 and the U.S. Constitution, is brought to redress unlawful discrimination in federal employment based on retaliation, to recover money damages, and to secure additional corrective remedies, including declaratory relief for NITZAWRIGHT ("Ms. Wright").

2. The factual allegations below detail the considerable reprisal the defendant U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC"), Charlotte Burrows, Chair, engineered against Ms. Wright because she exposed prolonged and unaddressed unlawful sexual harassment and retaliation by Kathrine Gonzalez ("Gonzalez") an Enforcement Supervisor in the EEOC Miami District Office ("MIDO"), who victimized two subordinate employees Mario Hernandez ("Hernandez") and Robert Tom ("Tom").

3. Ms. Wright complains that because of her prior EEO activity she was targeted for unlawful personnel action, beginning as early as 2016 and continuing through 2020, as evidenced by EEOC action, including a May 27, 2020, notice of proposed removal ("NOPR"), which underpins this case, and is biased on its face. (Exhibit "A", NOPR).

1

4. The NOPR is grounded on bogus claims that she, (a) obligated Haidy Elshater ("Elshater"), a second-line subordinate, to function as a private taxi service for her and Rosemary Caddle ("Caddle"), Elshater's first-line supervisor; and (b) behaved as an unwelcomed Christian missionary fixated on converting Elshater, a purported Muslim.

## II.    JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked per 28 U.S.C. §§ 451, 1331, and 1343. Its power to oversee this action is allowed pursuant to Sections 706(f)(1) and(3), and Section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-16(c), 2000e-5(f)(1) and (3) et seq. ("Title VII"), and Section102 of the Civil Rights Act of 1991, as amended, and the Civil Rights Attorneys' Fees Awards Act of 1976, as amended, 42 U.S.C. §1988, et seq.

6. Venue is proper in the United State District Court for the Southern District of Florida, Miami Division, by 42 U.S.C., 2000e-5(f)(3). Additionally, this is the proper venue under 28 U.S.C. Section 1391(e) as the primary actions complained of either occurred within or were directed within the District's geographical boundaries.

## III.    PARTIES

7. Plaintiff NITZA WRIGHT, a resident of Broward County, Florida, is a Hispanic female who, at all times relevant to this action and beginning in 2009 was the Supervisory Enforcement Manager ("EM") in the MIDO, located at 100 SE 2nd Street, Suite 1500, Miami, FL 33131.

8. Ms. Wright's federal employment spanned over three decades and was discipline free.

9. Defendant EEOC, Chair Charlotte Burrows (in her official capacity) is a federal agency of the United States, employing over 500 persons in several field offices, including the MIDO, with headquarters ("HQ") in Washington, DC.

10. As the Chair of the EEOC, Burrows is the senior, Executive Branch federal official

2

responsible for the actions of the EEOC.

11. Chair Burrows' predecessor was Janet Dhillon, the then Chair most involved in relevant issues in this case.

### IV.    ADMINISTRATIVE REMEDIES EXHAUSTED

12. Ms. Wright exhausted prerequisite administrative remedies before her original Complaint was timely filed on April 8, 2022, within 90-days from January 8, 2022, when her counsel received by US Postal Service, certified mail (#7020 0090 0000 5117 4305), the EEOC's Final Agency Decision ("FAD") for Ms. Wright's EEO Complaint No. 2020-0053

13. The FAD evolved from a formal administrative complaint Ms. Wright filed on or about August 5, 2020.  As to her administrative complaint and all related supplemental submissions, Ms. Wright incorporates them here by reference.

### V.    STATEMENT OF FACTS

14. This action *solely concerns two retaliatory actions* by EEOC against Ms. Wright—specifically nothing else but: (1) a discriminatory **proposed** removal from employment; and (2) a concurrent purported subsequent involuntary "paid administrative leave" that was tantamount to premature dismissal, and devoid of due process.

15. On May 27, 2020, EEOC served Ms. Wright with notice, proposing her removal "from [her then] . . . GS-14, Enforcement Manager [job] in the Miami District Office . . . and from the federal service.

16. "This proposal is not a final decision", the NOPR promised, "but, if taken, will become effective no sooner than thirty (30) calendar days from your receipt of the proposal pursuant to EEOC Order 570.001."

17. One week later, on June 3, 2020, and effective immediately, EEOC senior management effectively ended Ms. Wright's career without any notice, or an opportunity to defend

herself. The defendant imposed what it defined as "paid administrative leave" that involuntarily barred her from work and effectively ended her career as a federal employee before her NOPR appeal was decided.

18. The "Employee Rights" section of the NOPR stated unequivocally: "You will remain in active-duty status during this advance [30-day] notice period."

19. Ms. Wright repeatedly requested an explanation for her placement on involuntary leave, but EEOC management ignored them and refused to respond.

20. Thomas Colclough ("Colclough") issued the NOPR.

21. Colclough was then acting, or approved district director ("DD") in Charlotte, NC office.

22. Colclough's authority as acting DD was no different than his responsibility as a DD.

23. On a date and time unknown to Ms. Wright, Colclough signed up as the proposing official ("PO") after the Director of the Office of Field Programs ("OFP") in HQ, Nicholas Inzeo ("Inzeo"), asked him to serve.

24. A PO's responsibilities are governed by EEOC Order 570.001.

25. The NOPR measurably preceded EEOC's completion of its investigation of Elshater's administrative action against her first-level supervisors and Ms. Wright, her second-level supervisor.

26. To fulfill the PO duties, management in HQ, through Inzeo, emailed documents to Colclough for him to review and consider before issuing the NOPR.

27. The NOPR informed Ms. Wright that she had 15 days to respond to the notice.

28. Promptly, upon receiving it Ms. Wright contacted Colclough and requested copies of the documents he was given.

29. The NOPR recited Ms. Wright's entitlement to examine all material the PO relied on to issue the NOPR.

30. Ms. Wright requested the documents from Colclough, who said ask Los Angeles DD, Rosa Viramontes, who "will provide the information used for the [his] proposal."

31. Responding to a request from Ms. Wright's counsel, Viramontes, who swears Colclough provided them, attached the alleged itemized documents to an email dated on June 9, 2020.

32. Item (1) was a copy of a 30-page FAD (Exhibit "B", the "2018-0025 FAD") Ms. Wright received on or about March 26, 2020.

33. The 2018-2025 FAD addressed Ms. Wright's EEO Complaint No. 2018-0025, alleging retaliatory mistreatment for prior EEO activity exposing sexual impropriety by supervisor, Katherine Gonzalez ("Gonzalez"), dating back to 2016, least, or earlier according to Hernandez.

34. The 2018-2025 FAD is not referenced in Colclough's NOPR and is unrelated to Elshater.

35. Item (2) the EEOC sent was an affidavit from Alyssa Keene, an employee in the MIDO who was interviewed early during the investigation of Elshater's EEO case.

36. Item (3) the EEOC sent was a copy of an email from the Office of Equal Opportunity ("OEO") Director Stan Pietrusiak ("Pietrusiak") dated May 22, 2020, 5 days before the NOPR was issued.

37. Pietrusiak's email confirms he set aside policy and solely to bolster Elshater's case he sent Elshater's affidavit to the Chair's staff before also giving it to Inzeo, because there was no corroborating support for her claims.

38. Pietrusiak did not send Ms. Wright's rebuttal affidavit in which she denied Elshater's uncorroborated contentions.

39. Item number (4) sent to Colclough was a copy of the Notice of Acceptance ("NOA") dated January 16, 2020, that confirmed the issues among Elshater's claims that the agency had accepted for investigation.

40. The NOA explicitly documents the EEOC's refusal to amend Elshater's complaint to include an opportunistic claim that was markedly different from her initial allegations of Ms. Wright's wrongdoing.

41. The NOA stated Elshater's prerequisite, initial counseling of her original EEO complaint "did not identify February 2017", as the date the proselytizing by Ms. Wright allegedly began. Rather, "[Elshater] … identif[ied] March 2018 as the start date of the alleged harassment related to proselytizing. Therefore, the Notice of Acceptance will not be revised to allege a new, earlier date of when the alleged EM's [Enforcement Manager's] proselytizing began.", the NOA held.

42. The claims the EEOC accepted for investigation was limited to Elshater's original timeframe of Ms. Wright's alleged discrimination: only March through September 2018.

43. Colclough's NOPR blames Ms. Wright for conduct outside of the period that the EEOC officially approved for investigation.

44. Item, number (5) the last document Viramontes and EEOC management identified that Colclough received and considered was Elshater's redacted affidavit.

45. On June 10, 2020, Viramontes confirmed again that the 5 itemized documents she sent the day prior were those Colclough solely relied upon.

46. Similarly, on June 17, 2020, Yolanda Owens ("Owens"), the Director of Labor, and Employee Relations, who Inzeo confirms assisted Colclough, and EEOC admits prepared an investigation report" for him, again confirmed that Colclough only reviewed the items Viramontes sent, specifically including Ms. Wright's 2018-0025 FAD.

47. Colclough denies he received all the items on EEOC's list of materials it reportedly, and repeatedly confirmed were provided to him.

48. Colclough swears he was only given Elshater's affidavit, the NOA, Owens' "investigation

report" and EEOC's Climate Assessment and Recommendations ("CAR", Exhibit "C").

49. In an affidavit dated February 4, 2021, Colclough avers he relied on two items to decide whether to issue the NOPR—the NOA, and Elshater's affidavit.

50. But the NOPR includes details about Ms. Wright that's not included in Elshater's affidavit.

51. Moreover, the NOPR accepts Elshater's claims, hook, line, and sinker, and Colclough's sworn testimony is that he was under no obligation to provide due process to Ms. Wright.

52. Inzeo has testified that Colclough had the discretion to obtain more evidence besides Elshater's affidavit.

53. Colclough has affirmed that before he received any document, Inzeo called to "inform[] me that the former Chair's office was working a proposed removal action and [Inzeo] asked me if I had any concerns conducting the proposed removal after reviewing the documents … [and] I told him I did not have any concerns issuing the proposed removal.

54. Inzeo's January 2021 affidavit in Ms. Wright's ROI suggests the former Chair's reliance on the CAR and Elshater's allegations to propose removing Ms. Wright.

55. At the time Ms. Wright's termination was considered, or proposed, the investigation into Elshater's claims were incomplete and inconclusive.

56. The Chair' staff was made aware by OEO who exhibited bias against Ms. Wright by recommending her removal before Elshater had signed her affidavit.

57. Believing she was a target for retaliatory removal, Ms. Wright on June 8, 2020, contacted EEOC's OEO to initiate prerequisite counseling.

58. On or about July 13, 2020, the OEO Counselor conducted the initial interview.

59. The complaint was not resolved during counseling.

60. On August 5, 2020, Ms. Wright timely filed a formal complaint.

61. On November 19, 2020, OEO accepted the following claim for investigation: "Whether

Complainant [Ms. Wright] has been subjected to retaliation (prior EEO complaint [Complaint No. 2018-0025] and acting as a witness), when:

1. On May 27, 2020, Complainant was issued a Proposed Notice of Removal, which Complainant alleges was the result of a conspiracy among named and unknown EEOC officials; and
2. On June 3, 2020, Complainant was placed on paid administrative leave.

62. Ms. Wright's claim of retaliation includes her participation in her own 2018 EEO complaint, (Complaint No. 2018-0025) that was decided in March 2020, less than two months before the NOPR.

63. Ms. Wright's claim of retaliation includes improper behavior and conduct related to sexual misconduct by Gonzalez that the plaintiff reported to the management since 2016, at least, which was ignored for years.

64. Ms. Wright's claim of retaliation includes her participation as a key witness for Hernandez, and Tom, the male employees who filed EEO complaints against Gonzalez, their MIDO female supervisor.

65. Ms. Wright's claim of retaliation includes Ms. Elshater having filed an unsubstantiated EEO complaint against the plaintiff (EEOC Complaint No. 2019-0005) and upon which management based its NOPR.

66. Ms. Wright's claim of retaliation includes that her placement on administrative leave was a retaliatory constructive discharge.

67. On May 29, 2020, just two days after the NOPR was issued to Ms. Wright on May 27, her job in MIDO was posted as vacant.

68. The application period, and new hire started before a final decision on the NOPR.

69. By the OEO's acceptance date on November 19, 2020, Ms. Wright had been officially removed from federal service, effective October 27, 2020.

70. Ms. Wright intentionally chose to not amend her EEO administrative claim to include her actual removal because per 29 C.F.R. § 1614.107(a)(5) claims that a proposed action was retaliatory

8

are not subject to dismissal on that basis.

71. On March 10, 2021, the investigation was completed, and by letter dated March 22, 2021, OEO issued to Ms. Wright a copy of the Report of Investigation ("ROI"), notifying her of her right to request a hearing before an AJ within 30 days, or to receive a FAD from then EEOC Chair Dhillon, within sixty-days.

72. Ms. Wright did not request a hearing, and the EEOC failed to issue the FAD within the 60-day regulatory timeframe.

73. Rather, on August 24, 2021, three months after the FAD's due date, the Office of Employment Opportunity ("OEO") sent out a supplemental ROI with additional documentation it identified as Section 12.2, and another notice of her of the right to request a hearing or to receive a FAD.

74. Ms. Wright did not request a hearing within 30 days of receiving the supplemental ROI, and the agency, belatedly again, issued the FAD for Ms. Wright's Complaint No. 2020-0053 (the "2020-0053 FAD").

75. As stated above, ¶ 12, Ms. Wright filed this timely civil action as her preferred option.

76. She alleges the following grounds to support her claim of unlawful retaliation.

77. At all times relevant senior, and mid-level management, including then Chair, Dhillon, Nicholas Inzeo, Thomas Colclough, and Rosa Viramontes (the deciding official ("DO") who sustained the NOPR) knew about the facts that were included in a *Climate Assessment and Recommendations* ("CAR") dated June 21, 2019.

78. In sum, the CAR found cause for allegations Ms. Wright made in her April 2018 EEO complaint that was closed on March 26, 2020—two months before the NOPR was issued.

79. The CAR also recognized that in 2016 and continuing through late December 2017, at least, Ms. Wright had reported, had encouraged Hernandez and Tom, the male victims of sexual harassment to complain, and that she was a witness for the victimized males.

80. Tom's, and Hernandez' separate cases proceeded to civil actions in this court, including *Hernandez v. Chair, Janet Dhillon, EEOC*; Civil Action No.: 1:20-CV-22721-FAM, which continued through 2022.

81. The CAR includes that based on Ms. Wright's complaint about Gonzalez, the MIDO District Director ("DD"), Michael Farrell ("Farrell") eliminated several components of Ms. Wright's supervisory duties, and yet required her to act (i.e., approve leave and submit evaluations, for example) as if still performed by her.

82. Farrell also barred Ms. Wright from holding meetings with her subordinates (supervisors and investigators, all of whom were essential to her job as Enforcement manager ("EM").

83. Farrell hired a former MIDO Deputy Director, Ossie Black ("Black") as a contractor, even though he knew Black, while employed at EEOC: (1) knew about but was complacent regarding the inappropriate sexual of supervisor Katherine Gonzalez'("Gonzalez") sexual harassment of male subordinates, the conduct about which Ms. Wright had repeatedly complained; and (2) had shown discriminatory animus directed at Ms. Wright.

84. Farrell confirmed to Ms. Wright and to MIDO staff his support for Gonzalez despite having proof (e.g., at least 1 picture, taken in the workplace, of Gonzalez' exposed breasts) and several reports from Ms. Wright and other MIDO staff about her inappropriate sexual behavior and other misconduct.

85. Farrell's support for Gonzalez, an EEOC investigative team assessed, "discouraged Ms. Wright from attempting to participate in either the EEO or Harassment Prevention Program."

86. The EEOC investigative team further assessed that Farrell encouraged Gonzalez to file an EEO complaint against Ms. Wright, and he assisted Gonzalez with the wording.

87. Based on the foregoing findings that supported Ms. Wright's EEO complaint No. 2018-0025, the EEOC found cause

88. Every decision maker, including the then Chair, Janet Dhillon, Nicholas Inzeo, the proposing official Thomas Colclough, and the deciding official Rosa Viramontes knew about Ms. Wright's history of EEO complaints, and her commitment to expose misconduct in the workplace.

89. Janet Dhillon, for example, knew about the climate assessment and the cause determinations favoring Ms. Wright.

90. The OEO Director "recommended firing [Ms. Wright] to EEOC Chair [Dhillon] in May 2019", even before Elshater's affidavit was verified. (Exhibit "D", FAD, 2020-0053, p. 11)

91. The advice was made while "briefing EEOC Chair on the findings and recommendations contained in the climate assessment report." (Exhibit "D", FAD, 2020-0053, p. 11, n. 4).

92. Inzeo also knew about that, too. He discussed the CAR with Dhillon's staff. He also was aware of the plaintiff's claims in her 2018-0025 complaint concerning Farrell, the then DD.

93. Colclough received a copy of Ms. Wright's 2018-0025 FAD (Exhibit "B") and admits he read the CAR, despite claiming it did not influence his decision.

94. Viramontes visited the MIDO in 2017 to assist the management team, including the plaintiff, and was informed about Gonzalez' sexual on the job harassment of Hernandez and Tom.

95. The CAR includes a proposed remedy for Ms. Wright from the OEO, which is inconsistent with the cause findings.

96. Per the CAR, the OEO's multiple choice recommendation to Resolve Ms. Wright's] Complaint No. 2018-0025 offers: "Option I: Termination"; "Option 2: Demotion/Directed reassignment; or should she agree to retire "from the Agency instead of being subjected to these disciplinary actions, then the Agency should consider making her following proposal: (1) providing Ms. Wright with a detail to a GS-15 position (on paper, with no compensation paid to her); (2) paying into Ms. Wright's retirement fund the difference between her current GS-14 position and

the GS-15 position; and (3) including in her personnel record a memo terminating her GS-15 detail in early FY 2019. These benefits would be subject to Ms. Wright taking all necessary actions to dismiss her EEO complaint and agreeing to immediately retire from the Agency. OEO has checked the most recent Executive Orders and confirmed with ELR that there is no legal impediment to offering Ms. Wright this settlement package."

97. Less than a year later, on or about May 26, 2020, Ms. Wright received the 2018-0025 FAD. (Exhibit "B", 2018-0025 FAD).

98. The FAD did not contradict the cause findings in the CAR but did not sustain Ms. Wright's EEO complaint.

99. The 2018-0025 FAD does not mention Elshater but was provided to Colclough, with the CAR, which does not and did not concern the Elshater case.

100. Viramontes' sworn testimony is that she received the document by email from Colclough, informing her that the items he attached were those that he relied upon to issue the NOPR.

101. Viramontes sent the items to Ms. Wright, via her counsel, based on the grounded belief that Colclough had relied on the items he forwarded.

102. As a result of the unlawful conduct, Ms. Wright has suffered harm, including pain and suffering, and emotional setbacks.

## ENTITLEMENT TO RELIEF
### COUNT I: Retaliation (Title VII, 42 U.S.C. §§ 2000(e), et. seq.

103. Ms. Wright incorporates paragraphs 76 through 101 to support her retaliation claim.

104. Additionally, she avers as a direct and proximate result of the protected EEO activity alleged in paragraphs 76 through 101, Ms. Wright suffered material adverse employment actions, including being ostracized and placed on "administrative leave" which was not supported by the evidence, the EEOC's internal rules, nor by controlling regulations.

105. The adverse actions would deter a reasonable employee from engaging in EEO activity.

106. A causal nexus exists between Ms. Wright's undertaking of the protected activity and the retaliatory conduct complained of in paragraphs 76 through 101 above and the material adverse action taken by the defendant agency against her.

107. Against Ms. Wright, Colclough credited Elshater's unsupported claims and concluded that Plaintiff's alleged "actions constitute[d] harassment based on religion forbidden by . . . EEOC Order 560.005 and are wholly inappropriate and unbecoming for a Supervisory . . . (Enforcement Manager)."

108. Before deciding on the proposed penalty, Colclough said he "considered all relevant *Douglas*[1] factors", but he failed to address another supervisor who Elshater had claimed also harassed her because of her religion.

109. Specifically, to the "penalty imposed upon others for the same or similar offenses", Colclough stated this: "To my knowledge the Commission has never been previously confronted with misconduct of the type alleged here." (Exhibit "A', NOPR, p. 3).

110. Colclough identified the Notice of Amendment as one of 2 documents he relied on to make his decision to issue the NOPR, and Viramontes confirmed, by producing the document to Ms. Wright's counsel that was the case.

111. The Notice of Amendment included the EEOC acceptance of an allegation by Elshater that another supervisor had discriminated against her based on her Muslim religion.

112. Colclough' misrepresents the truth.

113. Colclough and he closed with this: "Taking these factors into consideration, I find that a proposed removal is both reasonable and appropriate."

---

[1] *Douglas v. Veterans Administration*, 5 M.S.P.B. 313, 332 (1981).

## COUNT II: (<u>Deprivation of Due Process</u>)

114. EEOC also violated Plaintiff's due process rights.

115. The 5th Amendment to the U.S. Constitution is clear: "No person shall be deprived of life, liberty, or property, without due process of law.

116. EEOC did not ensure Colclough had meaningful, relevant documentation to consider; he did not ask for any available material, or additional, possibly exculpatory evidence from affiants other than Elshater; and EEOC, without notice or an opportunity to oppose, unilaterally and unlawfully altered the issued NPR and thereby deprived Ms. Wright of a guarantee that the NPR declared: "You will remain in active-duty status during this advance notice period."

117. Then on June 3, 2020, a week after EEOC issued the NPR, the agency deprived Ms. Wright of the guarantee and removed her from active-duty status as Enforcement Manager in the MIDO.

118. Dhillon requested the action, and Inzeo followed the directive, the EEOC admits.

119. Per the June 3, 2020, directive, EEOC barred Plaintiff from "any EEOC premises" and from "participat[ing] in any work-related activities".

120. EEOC ignored Ms. Wright's objection and refused to acknowledge repeated pleas she made to EEOC for an explanation for the unauthorized disciplinary measure without advance notice or affording her an opportunity to respond to any before denying her right to work for several months before her appeal of the NOPR was resolved.

121. On May 29, 2020, forty-eight hours after EEOC issued the NOPR, EEOC advertised Ms. Wright's position in the MIDO as vacant, interviewed applicants, and then on July 24, 2020, announced Ms. Wright's replacement, all before her appeal of Colclough's NOPR was decided.

122. EEOC mischaracterized Ms. Wright's removal from active to inactive duty status as "paid administrative leave".

123. EEOC utilized an outdated internal policy that defines "administrative leave" as an agreed to and approved "absence from duty administratively authorized without loss of pay or charge to leave" EEOC Order 550.007, Appendix A, p. A-1, ¶10.

124. That policy is obsolete and certainly was inapplicable to Ms. Wright.

125. EEOC's "administrative leave" definition is contrary to law that defines "the term 'administrative leave' [as] leave— (A) without loss of or reduction in— (i) pay; (ii) leave to which an employee is otherwise entitled under law; or (iii) credit for time or service; and (B) that is not authorized under any other provision of law". 5 U.S.C. §6329a(a)(1).

126. None of those provisions applied to Ms. Wright, but even if they did, "an agency may place an employee in administrative leave for a period of not more than a total of 10 workdays" in any calendar year.  5 U.S. Code § 6329a(b).

127. Ms. Wright's alleged "administrative leave" exceeded that, by a lot.

128. Administrative leave with pay may be welcomed by some, but the threat of forced leave was a deterrence for an employee like Ms. Wright, whose preference was to work, from engaging in protected activity.

129.  By violating the procedural right to which she was entitled per notice in the NOPR, the leave EEOC forced on Ms. Wright was denial of her right to due process but could also support her claim of unlawful retaliation as alleged above in paragraphs ¶¶ 76 to 101.

130. The leave EEOC improperly imposed on Plaintiff after issuing the NPR was "notice leave", statutorily defined as "leave . . . in which an employee who is in a notice period is placed. 5 U.S.C. §6329b(a)(8)(C).

131. "[N]otice period' means a period beginning on the date on which an employee is provided notice required under law of a proposed adverse action [like future termination] against the employee . . .." 5 U.S.C. §6329b(a)(9).

15

132. EEOC denied Ms. Wright due process by violating 5 U.S.C. §6329b(b).

133. Placement on "notice leave" is conditional: "An agency may place an employee in leave under paragraph (1) only if the agency has- (A) made a determination with respect to the employee that the continued presence of the employee in the workplace . . . while the employee is in a notice period . . . may- (i) pose a threat to the employee or others; (ii) result in the destruction of evidence relevant to an investigation; (iii) result in loss of or damage to Government property; or (iv) otherwise jeopardize legitimate Government interests . . . . 5 U.S.C. §6329b(b)(2).

134. Nowhere, did Inzeo or other members of EEOC management allege or provide a scintilla of evidence that Ms. Wright posed a threat to her coworkers or others.

135. Similarly, EEOC lacked any evidence that, (a) she would destroy any evidence that was relevant to her proposed removal; (b) That she would damage government property; or (c) That she would otherwise jeopardize any legitimate government interests.

136. Had EEOC believed any of that, it was duty bound to provide such information to Ms. Wright. She asked and was ignored.

137. To Plaintiff's detriment, EEOC violated its notice leave obligations under the law.

### PRAYER FOR RELIEF

Wherefore, the Plaintiff Nitza Wright respectfully asks this Court to:

A. Find Ms. Wright was unlawfully retaliated against.

B. Find that Ms. Wright was denied due process.

C. Allow a jury to determine appropriate money damages.

D. Enjoin enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from subjecting employees to unlawful "administrative leave"

E. Order Defendants to institute and carry out policies, practices, and programs which

provide equal employment opportunities to eradicate unlawful, retaliation in employment.

F.  Order Defendants to amend Plaintiff's personnel file as needed.

G.  Order Defendants to reimburse Plaintiff for reasonable fees, costs under 42 U.S.C.A. § 2000e-5, and

H.  Grant such further relief as the Court considers necessary and proper under the circumstances in the public's interest.

## CONFIRMATION OF JURY TRIAL DEMAND

Per Rule 38, Fed, R. Civ. P., Ms. Wright respectfully requests a trial by jury on all issues.

**Law Office of Joseph Hughes P.A**

*/s/ Joseph S. Hughes*
**Joseph S. Hughes, Esquire**
Florida Bar No.: 0108228
1141 SE 2nd Ave
Fort Lauderdale, FL 33316
Tel: (954) 256-5125
Fax: (954) 256-5126
Email: jhughes@jhugheslegal.com

*/s/ Willan F. Joseph*
**Willan F. Joseph, Esquire**
(*Pro hac vice*)
PA Bar No.: 63073
22 N. Lansdowne Ave
Lansdowne, PA 19050
Tel: (610) 259-8900
Fax: (610) 259-8989
Email: WFJ@wefreelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 13, 2022, I electronically filed the foregoing document with
with the Clerk of the Court using CM/ECF, through which counsel for parties shall receive notice.

*/s/ Joseph S. Hughes*
**Joseph S. Hughes, Esquire**